# EXHIBIT 5



# PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806   pryorcashman.com

**David Rose**
**Managing Partner**

Direct Tel: 212-326-0142
drose@pryorcashman.com

September 18, 2025

**VIA EMAIL AND FED-EX**

Grizzly Touring, LLC
c/o Jade M. Brown, Esq.
1520 Haskell Ave.
Lawrence, Kansas 66044

    Re:    *Response to Grizzly Touring, LLC's July 22, 2025 Letter*

Dear Mr. Brown:

    This firm represents Rodarius Green p/k/a Rod Wave ("Mr. Green"). This letter responds to Grizzly Touring, LLC's July 22, 2025 letter to Mr. Green regarding its purported "Demand for Repayment of Unrecouped Advances" (the "July 22 Letter"). Please direct all future correspondence concerning these matters to me.

    In the July 22 Letter, Grizzly Touring, LLC ("Grizzly") demands the return by Mr. Green of purportedly unrecouped advances totaling $27,081,774.86 and asserts that Mr. Green remains bound by the exclusivity provisions of the parties' touring agreement, as amended (the "Agreement"). (July 22 Letter at 1.) Mr. Green rejects both contentions. *First*, your letter provided no explanation as to how Grizzly calculated the more than $27 million it demands Mr. Green return. We understand that Mr. Green performed no fewer than 28 of 35 shows pursuant to the February 1, 2024 Amendment to the Agreement.[1] Pursuant to Sections 7 and 8 of that Amendment, Grizzly was required to pay Mr. Green a $40,250,000 guarantee earned at the rate of $1,150,000 per show, with an advance to Mr. Green of $20,125,000 due at signing and with the balance to be paid "pro-rata on a weekly basis." Leaving aside, for the moment, that any inability of Mr. Green to perform a handful of the final shows would have been solely attributable to Grizzly's breaches of the Agreement as set forth below, not performing those shows would only reduce pro-rata the guarantee for those particular performances, and there would be nothing for him to return, let alone an amount approaching Grizzly's $27 million figure. To the extent Grizzly contends that purported personal guarantees executed by Mr. Green support a different result, we note that the July 22 Letter does not attach those purported guarantees.[2]

---

[1] Please provide a fully executed copy of each agreement with Mr. Green that Grizzly contends is enforceable.

[2] Please provide a fully executed copy of any personal guarantee executed by Mr. Green that Grizzly contends is enforceable.

 PRYOR CASHMAN LLP

Grizzly Touring, LLC
September 18, 2025
Page 2

*Second*, the July 22 Letter demands that Mr. Green adhere to the exclusivity provisions in the Amendment. (July 22 Letter at 1.) In particular, the July 22 Letter references Section 5 of the Amendment (providing that the term of the Agreement, as amended, is 35 show dates to be performed on *mutually agreeable* dates) and Section 10 (providing, among others, that Grizzly has a right of first refusal with respect to Mr. Green's "show dates in North America *while this agreement is in effect*.") (emphasis added).

However, as a result of Grizzly's manifest breaches, the Agreement and any exclusivity provisions contained in it are no longer in effect. The Agreement obligated Grizzly to promote Mr. Green's shows on "mutually agreeable dates," at "mutually agreeable venues (subject to routing)" "on a good faith basis." (Tour Agreement ¶¶ 5, 6; Amended Tour Agreement ¶¶ 5, 6.) Grizzly repeatedly and materially breached these provisions, including by making unilateral, onerous and inexplicable routing and booking decisions – often at the last minute – that Mr. Green nevertheless honored at great pains to avoid disappointing his fans.

Grizzly further failed to properly ship and load-in Mr. Green's touring equipment and staging, a fundamental obligation and basic expectation under the Agreement because, obviously, Mr. Green cannot perform without it. To the extent Grizzly engaged PRG or another company to handle these matters, Grizzly negligently hired and managed those entities, further interfering with and undermining Mr. Green's ability to perform the final shows. Accordingly, as a result of Grizzly's demonstrable breaches, the Agreement and its exclusivity provisions are no longer in effect.[3]

Moreover, Mr. Green has suffered substantial damages, including irreparable reputational damage, owing to Grizzly's conduct that rendered it logistically impossible for Mr. Green to complete the remaining shows. As a result, Mr. Green has claims against Grizzly, its affiliates and principals for breach of contract, declaratory relief, fraud in the inducement and breach of the implied covenant of good faith and fair dealing, among others.[4] Indeed, in an egregious demonstration of its bad faith, we understand that even after its demonstrable failings and breaches, Grizzly sought to pressure Mr. Green into signing an even more expansive exclusivity agreement with Grizzly, which Mr. Green refused to do. Mr. Green intends to vigorously pursue his rights,

---

[3] Beyond the Agreement no longer being in effect, it is unlikely a court would enforce the exclusivity provision even if it were, since personal services contracts are not enforceable by specific performance or injunction, and in all events, any purported harm to Grizzly would be compensable in money damages. Put bluntly, Mr. Green has lost all faith in Grizzly, can no longer rely on Grizzly as a capable touring collaborator and cannot place such an essential element of his career as touring in the hands of a company that has so thoroughly proven itself incompetent.

[4] You should know now that based on Grizzly's misrepresentations as to its capability to perform under the Agreement, Mr. Green forewent a deal worth approximately $100 million with another promoter. Grizzly is responsible for the damages Mr. Green suffered from the loss of that highly lucrative opportunity.

**PRYOR CASHMAN LLP**

Grizzly Touring, LLC
September 18, 2025
Page 3

claims and remedies, and likewise will vigorously defend against the baseless demands in your letter.

    Grizzly and its affiliates and principals (including, without limitation, Mammoth and AG Touring) are hereby directed to preserve all documents and information, including electronically stored information (such as emails and text messages on all platforms) concerning the matters set forth in this letter. The foregoing is not intended to be a full recitation of our client's rights, claims, remedies and defenses, all of which are expressly reserved.

    If Grizzly wishes to discuss these matters prior to the commencement of litigation, please contact me.

Sincerely,

David Rose