# EXHIBIT 6



## Services Agreement
## Terms and Conditions
## Music

This Services Agreement (this "Agreement") is made on, August 22, 2024 between **Production Resource Group, L.L.C.** ("PRG") with an address at 1245 Aviation Place, San Fernando, CA 91340, and **Rod Wave Inc** ("Client") with an address at **2650 Pinellas Point Drive, St Petersburg, FL 33172**

1. **Agreement.**
PRG agrees to provide services ("Services"), including the provision of equipment (the "Equipment"), to Client under the terms of this Agreement. Any, quote, bid, proposal, invoice, statement/scope of work or similar document issued by PRG (referred to as "SOW") will be attached, incorporated herein and will constitute a part of this Agreement. The SOW may include the following schedules, as applicable: Schedule A - Equipment List; Schedule B – Personnel and Services; Schedule C - Payment Schedule; Schedule D – Schedule & Itinerary.

2. **Term.**
   ☒ **Master Services Agreement.** This Agreement will cover all events and tours occurring during the Term ("Tour"). Each Tour will be subject to its own SOW. This Agreement is effective for three years from the date above and will renew for additional one-year terms unless otherwise terminated. Each SOW will have its own Rental Term.

   ☐ **Tour Specific Agreement**. This Agreement will cover this Tour only. The Term shall begin on the date as set forth in the SOW and shall end when the Equipment is returned to the designated PRG branch.

3. **Services.**
(a) PRG represents that it will provide Client with the Services as agreed to in the SOW, including Equipment required for the provision of Services.
(b) Client may request changes in the Services (or changes to the Equipment) being provided by PRG hereunder. All such changes shall be authorized by a written "Change Order" and shall be performed under the applicable conditions of this Agreement. PRG shall not be obligated to perform additional or changed work until a Change Order, including the amount of compensation and time extension, has been agreed to and executed by both parties in writing.
(c) Client acknowledges that any consumables not included on the SOW will be invoiced separately. Consumables may include, but are not limited to, gel, gel-strings, templates, and compressed gas.

4. **Client Data.**
If the Services include recording or video services, Client is solely responsible for clearing any and all images (in any form) and all Client Data from the Equipment, prior to or upon return of the Equipment to PRG. PRG shall have no obligation to preserve or erase any Client Data, unless specifically included in the Services. It shall be the sole responsibility and obligation of Client to arrange for the safeguarding and storage of Client Data prior to the return of the Equipment to PRG. PRG shall not be responsible for disclosure of Client Data due to the re-rental of Equipment previously used on behalf of Client. PRG is not responsible for the loss of Client Data from any cause whatsoever, including, but not limited to technical malfunction, physical damages, or errors on the part of PRG employees, agents, representatives, contractors or subcontractors.

5. **Equipment.**
(a) As part of the Services, PRG is providing the Client with the exclusive use of the Equipment during the Term.
(b) PRG represents that all Equipment will leave its custody in good working order. Client shall be responsible to inspect the Equipment upon receipt and immediately notify PRG if any Equipment is missing or not in good working condition, and PRG will promptly replace any missing or non-functioning Equipment. **EXCEPT AS EXPRESSLY SET OUT HEREIN, PRG GIVES NO WARRANTY OR REPRESENTATION WITH RESPECT TO THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, INTERFERENCE OR INFRINGEMENT OR ANY OTHER WARRANTY NOT EXPRESSLY AGREED TO IN WRITING.**
(c) Thereafter, if any of the Equipment is defective, damaged, or lost, Client shall immediately notify PRG. PRG, at its option, will either repair or replace the Equipment as soon as reasonably possible. Client agrees to completely reimburse PRG for the cost of any repairs (including charges of shipping, labor, and parts), unless the defect or damage is caused by the negligence or willful misconduct of PRG, its employees, agents or contractors. Additionally, if any or all the Equipment is damaged beyond repair or is lost or stolen, then unless caused by the negligence or willful misconduct of PRG, its employees, agents or contractors, Client agrees to reimburse PRG for the full current replacement value of the Equipment, without deduction for depreciation.



(d) If Client hires any other labor to operate the Equipment at any time during the Term, Client shall be responsible for providing safety devices and equipment to safeguard users or operators during that period of use. **IN THE EVENT OF A MALFUNCTION, CLIENT MUST NOTIFY PRG PROMPTLY UPON DISCOVERY AND CLIENT SHALL NOT ATTEMPT TO SERVICE OR REPAIR ANY OF THE EQUIPMENT.**
(e) Whenever Client is responsible for shipping the Equipment, Client must ensure the Equipment is appropriately stored and transported, and shall provide, at its sole expense, competent and professional air-ride equipment transportation for the Equipment, and will properly prepare all loads for transport, including but not limited to the use of ratchet straps, load bars and padding.
(f) The obligations and responsibilities in this Paragraph 5 supersede any other indemnity obligations in Paragraph 11.

6. **Payment of Fees.**
**The total Fee and Payment Schedule are set forth in the attached SOW, Schedule C- Payment Schedule.**
(a) Client agrees to pay all Fees on or before the due dates as set forth in the SOW. All deposits are non-refundable. Client will be responsible for rental charges for Equipment until returned to the branch designated by PRG. Equipment returned past the dates as set forth in the SOW will accrue rental charges on a pro rata basis and will be invoiced separately.
(b) Fees for Equipment do not include expendables or consumables including but not limited to gel, gel-strings, templates, and compressed gas, all of which must be purchased by Client in addition to Fees under the SOW and will be invoiced separately. If additional equipment is ordered by Client, additional fees and terms will be set forth in a Change Order.

7. **Taxes, Freight and Other Charges.**
(a) Fees DO NOT include Taxes (as defined below) or freight charges. Any such charges included in the SOW are estimates, unless otherwise noted. Final Tax and freight charges will be included on the invoice and will be paid for by Client in addition to the Fees.
(b) For purposes of this Agreement, Taxes is defined as any taxes, levies, imports, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental, fiscal or other authority, other than taxes based on income or related to employment. Client shall hold PRG harmless from and indemnify PRG for any such Taxes imposed under this Agreement.
(c) If any of the Services are provided outside of the United States, PRG shall have the right to appoint a related or unrelated party to provide such Services and invoice that segment of the work to Client. In the event Client requests invoicing to a Client-appointed party outside of the United States, PRG will use reasonable commercial efforts to cooperate with such request; provided that Client will be responsible for any added cost or taxes arising from such billing. Upon request of Client, any Services provided in Canada may be contracted and invoiced through Production Resource Group Canada Ltd. and taxed accordingly.
(d) In the event there are any Taxes imposed on the Services and required to be paid or withheld in connection this Agreement, such amount shall be deemed as an addition to the agreed upon Fee and the amount paid to PRG shall be adjusted so that PRG receives the full agreed upon Fee, after taking into consideration the payment, deduction or withholding of any such Taxes.

8. **Health.**
(a) The parties agree that each of its personnel who enter the facilities of the other, will cooperate with reasonable inquiries related to public health matters and will follow instructions, rules, and processes, including, but not limited to, all COVID safety protocols and all general safety rules and policies of the facility. Such guidelines are subject to change and each party shall provide to the other with its most updated health and safety protocols prior to required entry into their respective facility, if applicable.
(b) If Client requires (i) testing of PRG personnel prior to PRG performing any Services, such testing shall be provided by Client at Client's sole cost, including any transportation and overtime costs, or (ii) fully vaccinated crew, then Client shall inform PRG of such requirement at least 30 days prior to the start of the Term.

9. **Safety.**
(a) PRG reserves the right to cancel the installation, use, and/or operation of its Equipment as part of its Services hereunder, at any time in the interest of safety, in its reasonable judgment following good faith conversations with Client. This cancellation will in no way be considered a breach of this Agreement and Client will be liable to PRG for all payments due under this Agreement.
(b) Client shall procure all necessary permits, consents, engineering plans, high wind action plan (if outside) and licenses for each venue, as applicable.
(c) If PRG is not providing the Rigging Equipment (defined below) or hiring the rigging labor, Client acknowledges that it has been advised that the raising and lowering of the rigging, and Equipment attached to rigging is a delicate and potentially dangerous task that should only be performed by persons who are adequately trained and certified. Any loss (personal injury, including death, or property damage) occurring due to the failure of the rigging or rigging operators (not hired by PRG) shall be borne by Client.

Initial  LW           Rod Wave Inc           Page 2

Music Services Agreement

Rev. 7/2023



(d) PRG takes no responsibility for the use of the Equipment where there are aerial stunts being performed using PRG Rigging Equipment (forming part of the Equipment under this Agreement) or where rigging personnel of Client or third-party contractors are using PRG Rigging Equipment as an anchor either for themselves or for any other equipment or attachments. Any person using PRG Rigging Equipment for any purpose to secure any items or people must inspect and satisfy themselves as to its suitability for use. Furthermore, if PRG personnel are not attaching the Equipment to PRG Rigging Equipment, PRG has no responsibility for the suitability of the attachments used or the security of the rigging or anything attached to the rigging, except if and only to the extent caused by the gross negligence or willful misconduct of PRG, its employees, agents, or contractors. "Rigging Equipment" may include all spansets, slings, shackles, carabiners, pulleys, cordage, fall protection equipment, truss, truss bolts, truss pins, and potentially chains, and chain motors and hoists.

10. **Insurance.**
    **10.1 CLIENT INSURANCE:**
    (a) During the Term, Client shall, at its own expense, secure and maintain the following coverages, with insurers reasonably satisfactory to PRG: (i) commercial general liability insurance in an amount not less than $5,000,000 per occurrence, combined single limit bodily injury and property damage, including coverage for personal injury, operations, completed operations, product liability and contractual liability. Limits may be provided by a combination of commercial general liability and excess liability policies. PRG and its parent, subsidiaries, affiliates and each of their directors, members, managers, officers, and employees ("PRG Parties") shall be included as an additional insured on a primary and non-contributory basis; (ii) evidence of workers compensation in statutory-required amounts including employer's liability with a limit not less than $1,000,000, and (iii) if Client is operating any vehicle at a PRG location, Business Auto Liability insurance shall be required, with a limit of not less than $1,000,000 per accident; (iv) and property insurance on an "all-risks" basis, including but not limited to coverage for flood, earthquake, and terrorism and weather-related damage (such as water damage) with minimum limits equal to the full replacement value of the Equipment, without deduction for depreciation. Coverage shall be included for inland transit, shall be primary, shall name PRG Parties as additional insured and loss payee with respect to the Equipment, and shall cover all risks of loss of, or damage or destruction to, the Equipment. If any Equipment is leaving the continental United States, the property insurance shall be on a worldwide basis covering the shipment of such Equipment in containers, trucks, sea vessels or the like, via air, land or water shall also be provided, with appropriate limits and coverages per vessel, as acceptable to PRG.
    (b) Client shall provide certificates of insurance evidencing compliance with the provisions of these requirements at the commencement of the Services and Client is responsible to pay the full amount of a Claim, including retention and deductible, regardless of limits or applicability of coverage.
    (c) In the event there are pyrotechnics used on this project, Client will name PRG as a primary additional insured on its liability policy for any claims whatsoever arising directly or indirectly from the use or presence of pyrotechnics.
    (d) Client shall provide certificates of insurance evidencing compliance with the provisions of these requirements at the commencement of the Services. Equipment will not leave the PRG facility without PRG's receipt of a compliant certificate of insurance. In the event Client is contracting with more than one PRG entity (US, Canadian, UK) one insurance certificate naming all contracting entities and including required coverage effective in such territories will be accepted.
    (e) Client is responsible to pay the full amount of a Claim, including the retention and deductible, if any, regardless of limits or applicability of coverage.

    **10.2 PRG INSURANCE:**
    **THIS SECTION IS ONLY APPLICABLE WHEN PRG PROVIDES PERSONNEL OR ON-SITE SERVICES (SEE EXHIBIT B OF THE SOW).**
    (a) During the Term, when providing Services, PRG shall, at its own expense, secure and maintain the following coverages: (i) commercial general liability insurance in an amount of $5,000,000 per occurrence, combined single limit bodily injury and property damage, including coverage for personal injury, operations, completed operations, and contractual liability. Limits may be provided by a combination of commercial general liability and excess liability policies. Client shall be included as an additional insured on a primary and non-contributory basis for loss for which indemnity is owed to Client; (ii) automobile insurance for all owned, non-owned, and hired vehicles used by PRG in connection with this Agreement, in an amount of $1,000,000 per accident combined single limit bodily injury and property damage; and (iii) workers compensation in statutory-required amounts. PRG shall provide certificates of insurance evidencing compliance with the provisions of these requirements. Furthermore, PRG shall provide certificates of insurance, with reasonable terms and limits, as reasonably requested by venue owners and operators in order to perform the Services hereunder.

11. **Indemnity.**
    (a) To the fullest extent permitted by law, **Client** expressly agrees to indemnify, defend and hold harmless PRG Parties from and against any and all liabilities, claims, demands, actions, losses, damages and expenses (including, without limitation, reasonable outside attorneys' fees and costs) for personal injury, death or property damage to the Equipment or other property ("Claims"), arising out of or resulting from any of the following: (1)

Initial  LW  *[initials]*   Rod Wave Inc   Page 3
                NB         Music Services Agreement

Rev. 7/2023



Client's breach of any terms in this Agreement; (2) Client's use or possession of Equipment; (3) Client's negligence or willful misconduct; (4) the transport or shipping of the Equipment, if handled or arranged by Client; or (5) violation of any rule, regulation or law. This indemnity includes indemnity by Client for claims of personal injury, death or property arising from civil unrest occurring at any site in which the Equipment is located, without regard to Client's actual participation in the unrest. Client shall not be obligated to indemnify or hold harmless PRG to the extent a Claim arises out of the negligence or willful misconduct of the PRG Parties.

(b) To the fullest extent permitted by law, PRG expressly agrees to indemnify, defend and hold harmless Client and its directors, members, managers, officers, and employees ("Client Parties") from and against any and all Claims arising out of or resulting from any of the following: (1) PRG's breach of any terms in this Agreement; (2) PRG's negligence or willful misconduct (3) the transport or shipping of the Equipment, if arranged by PRG; or (4) violation of any rule, regulation or law. PRG shall not be obligated to indemnify, defend or hold harmless Client Indemnitees, to the extent any Claim arises out of the negligence or willful misconduct of a Client Parties, the artist, attendees or invitees.

(c) In the event that any Claim or liability is caused in whole or in part by the concurrent negligent or intentional wrongful acts or omissions of PRG, its employees, agents or contractors on the one hand, and Client, its employees, agents or contractors, artist or invitee on the other hand, then this obligation to indemnify shall be comparative and each party shall indemnify the other to the extent that such party's negligent or intentional wrongful acts or omissions were the cause of such claim or liability.

(d) Notwithstanding any other indemnity obligations contained herein, Client will indemnify and hold harmless PRG Parties for any Claim whatsoever arising directly or indirectly out of the use or presence of pyrotechnics, including all costs of defense and reasonable outside attorney's fees.

(e) The provisions of this Paragraph 11 shall survive the expiration or earlier termination of this Agreement.

12. **Mutual Waiver of Consequential Damages.**
NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES SUCH AS, BUT NOT LIMITED TO, LOSS OF PROFITS OR REVENUE, COST OF CAPITAL, WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. **Late Delivery/Force Majeure.**
(a) **Force Majeure:** Except as otherwise set forth herein, nonperformance by either Party of any of its obligations under the Agreement will be excused to the extent and only for so long as such performance is rendered impossible by fire, flood, earthquake, elements of nature or acts of God, acts of war, terrorism, riots, civil unrest, strike (other than of the nonperforming Party or its subcontractors), pandemic, epidemic, governmental acts, failure of suppliers, including supply chain and manufacturer issues, third party trucking and labor shortages (not caused by a Party), or any other similar cause beyond the reasonable control of the nonperforming Party that would make it impossible, inadvisable or illegal to either render the Services or hold the event and the nonperforming Party continues to use commercially reasonable efforts to recommence performance whenever and to whatever extent possible. Client shall reimburse PRG for its actual costs incurred in the event of Force Majeure, and PRG agrees to use commercially reasonable efforts to mitigate costs.

(b) **Late Delivery**: PRG shall not be liable for late delivery or damage to the Equipment caused by (i) Client's failure to provide information relevant to the Services or comply with this Agreement or (ii) a Force Majeure Event, including manufacturer, third party trucking and supply chain issues. In the event of such delay, the time for delivery shall be extended for the same period that PRG was delayed by such occurrence.

14. **Itinerary and Exports.**
Client agrees that the Services, including the Equipment will be provided only at the venue(s) set forth on the Itinerary in the SOW. Further, Client shall not export any of the Equipment without first obtaining written approval from PRG and then determining the export classification of the Equipment and strictly complying with the responsibilities to obtain licenses to export or re-export Equipment and all laws relevant to import/export.

15. **Confidential Information.**
(a) During the Term, PRG may gain access or be exposed to certain confidential and proprietary information relating to the Tour or the business of Client or artist ("Confidential Information"). PRG agrees, for itself and its employees, agents and representatives, that all such Confidential Information shall remain and be kept in strictest confidence and shall not be disclosed to or used by any person or entity (except in the performance of the Services) without the prior written consent of Client, which consent may be withheld in its reasonable discussion. The obligation to maintain confidentiality provided herein shall survive any termination or expiration of this Agreement and may be enforced by injunctive relief or other equitable or legal remedies.

(b) Confidential Information shall not include any information which (i) is lawfully known by PRG prior to disclosure, (ii) is or becomes publicly available through no fault of PRG, (iii) becomes available to PRG on a non-confidential basis from a source to the best of PRG's knowledge, is not bound to an obligation of confidentiality or secrecy with respect to the information disclosed,; (iv) is independently developed by PRG without reference to or use of the Confidential Information, or (v) is required to be disclosed by subpoena or court order or other legal compulsion (after giving notice to the Client, if not prohibited).

---

Initial   LW   /s/          Rod Wave Inc          Page 4

Music Services Agreement

Rev. 7/2023



16. **Rights and Ownership.**
    (a) All rights of every kind in and to all photographs, film and recordings made by Client shall be and remain vested in Client, its licensees, successors and assigns, including, without limitation, the right to use and reuse all such photographs, film and recordings ("Recordings") in all manner and media now known or hereafter devised, in perpetuity, throughout the universe, and in connection with advertisements, promotions, publicity, clips, etc., related to the photographs, film and recordings made by Client.
    (b) Notwithstanding the Confidentiality Information paragraph above, Client grants PRG has the right to use and share any and all pictures, video, media and other content captured in ant format, relating to any event hereunder for use in promotional media and marketing. Such uses may include sharing on social media, company website, print and multimedia marketing materials, capabilities presentations, case studies and proposals <u>after the event only.</u> PRG will observe any reasonable request to withhold sharing of such media should it be considered confidential and/or private until a particular date. PRG agrees to credit any Clients, photographers, producers and/or exhibit builders upon request. Reposting of an unrelated entity or individual's post from any social or other media platform shall not be a violation of this section.

17. **Return of Equipment at End of Rental Term**
    (a) <u>Unless otherwise agreed as part of the SOW</u>, at the end of the Rental Term, or upon earlier termination, Client shall, at its sole cost and expense, deliver and return the Equipment to the agreed upon PRG depot, in its original condition, with reasonable wear and tear excepted. At the end of every Rental Term, PRG shall inspect the Equipment and shall notify Client of any damages or loss within a reasonable amount of time after the Equipment is returned. Client shall remain responsible for any damages to the Equipment discovered by PRG after inspection, and acceptance by PRG of the returned Equipment shall not constitute a waiver of such claims.
    (b) In addition to the other obligations under this Paragraph 17, Client shall be responsible for any expenses incurred by PRG to clean and/or repair damages to any Equipment necessary to restore the Equipment to its original condition, reasonable wear and tear excepted. Any such expenses will be invoiced separately.

18. **Termination and Cancellation.**
    (a) Client has the right to terminate this Agreement upon written notice to PRG if PRG breaches a material term of this Agreement, providing the breach is not cured within seven (7) days of PRG's receipt of written notice detailing the breach. In such event, Client shall only pay PRG for Services performed and Equipment rental through the date of termination.
    (b) PRG has the right to terminate this Agreement upon written notice to Client if Client breaches any material term of this Agreement and fails to cure such breach within seven (7) days of Client receiving notice of the breach from PRG. Breach includes (i) Client's failure to pay Fees when due, as per the terms of the SOW, (ii) or (ii) a situation in which PRG reasonably believes that the Equipment is in danger of being seized, taken or destroyed. Upon termination, PRG may immediately cease all Services and retake immediate possession of the Equipment. Client will remain responsible for payment to PRG of all Fees, plus costs incurred due to termination.
    (c) If a default is due to Client's failure to pay the agreed upon payments or other costs when due, in addition to any other rights or remedies of PRG, Client agrees to pay all costs of collection incurred by PRG, plus all interest at the highest rate allowed by law (but only after payments are at least 30 days past due).
    (d) In the event a Tour is cancelled not due to Force Majeure, Client shall pay to PRG all payments due under this Agreement through the date the Equipment is returned and Services end, plus (i) 3 weeks of the weekly fee or (ii) the weekly fee for remainder of the Term, whichever is less.
    (e) Either party may terminate this Agreement upon 45 days prior written notice. Any SOW in progress will be completed under the terms of this Agreement, or otherwise terminated subject to the terms of sections 17. (a) - (b) above, as applicable.

19. **No Alterations or Removal of Ownership Tags.**
    (a) Client shall not make any alterations, additions, or improvements to the Equipment and except to the extent necessary to replace consumables. Client may not disassemble the Equipment without the prior written consent of PRG.
    (b) Client agrees not to remove or permanently cover the tag, barcodes, insignias, or nameplates on the Equipment showing ownership in PRG.

20. **Not a Sale.**
    This Agreement does not constitute a sale of or create a security interest in the Equipment. PRG shall at all times retain sole ownership and title to the Equipment and Client shall not have or at any time acquire any right to ownership including through mere use, loss, damage, or failure to return the Equipment as provided herein.

21. **No Waiver.**
    The failure by either party to insist upon strict compliance with the terms and conditions of this Agreement even after a breach shall not be construed as a waiver of such party's rights under this Agreement. No course of dealing

Initial LW ⟨initials⟩     Rod Wave Inc     Page 5
Music Services Agreement

Rev. 7/2023



or delay by either party in exercising any right, power or remedy under this Agreement will operate as a waiver of any right, power, or remedy of that party.

22. **No Violation of Law.**
Client represents that is has not and will not (i) engage directly or indirectly in any transaction that could potentially violate applicable U.S. Economic Sanctions; (ii) promise, authorize, or make any payment to, or otherwise contribute any item of value to, directly or indirectly, to any third party, including any non-U.S. government official, in each case, in violation of the Foreign Corrupt Practices Act of 1977 (the FCPA), the U.K. Bribery Act 2010, or any other applicable anti-bribery or anti-corruption law.

23. **Governing Law and Jurisdiction.**
This Agreement shall be governed by the laws of the State of California applicable to contracts without regard to such state's rules with respect to choice of law, and venue and jurisdiction shall be vested exclusively in a court of competent jurisdiction sitting in Los Angeles County, California. The parties agree to accept service of process within or without the State of California in any matter to be submitted to any court pursuant to this Agreement. The prevailing party in any such litigation or action shall be entitled to its costs of suit and reasonable attorney's fees.

24. **Severability.**
If one or more provisions of this Agreement, or the application of any provision to any party or circumstance, is held to be invalid, unenforceable, or illegal in any respect, the remainder of this Agreement shall remain valid and in full force and effect.

25. **Notices.**
Any required written notices shall be deemed to have been duly given hereunder if sent by (i) a recognized overnight delivery service providing proof of delivery (such as FEDEX) or registered or certified mail, return receipt requested, to the addresses shown in this Agreement or the SOW; or (ii) email, providing there is a response email confirming receipt. Copies of all notices sent to PRG must also go to: notices@prg.com and PRG Legal Department, 1245 Aviation Place, San Fernando, CA, 91340.

26. **PRG Canada.**
For purposes of this Agreement, for Tours where PRG provides Services in Canada and Client requests invoicing as per paragraph 7(b) above, the PRG contracting entity shall be Production Resource Group Canada Ltd., and all other terms and conditions hereunder shall apply.

27. **Entire Agreement.**
This Agreement contains the entire understanding between the parties and supersedes any prior understandings, written or oral. Each party rejects any of the other party's forms or other documents submitted by such other party which contain contrary terms and conditions. Any modification of this Agreement must be in writing and signed by both parties. In the event of any conflict between this Agreement and a SOW, the SOW shall govern. This Agreement may be executed in counterparts and by electronic signature, or by scanned signature sent by e-mail. An electronic, or scanned signature shall be deemed to be a valid and binding original signature. These terms and conditions shall be binding, and Client shall be deemed to have accepted the terms and conditions contained herein when (a) Client has received a copy hereof or (b) Client accepts any of the Services, including the Equipment.

**ALL PRICES QUOTED ARE IN US DOLLARS**

**SIGNATURE PAGE TO FOLLOW**

Initial  LW  _(initials)_         Rod Wave Inc         Page 6
                                  Music Services Agreement
Rev. 7/2023



**ACCEPTED AND APPROVED:**
**CLIENT: Rod Wave Inc**

By: _LeShun Williams_____, a duly authorized signatory

LeShun Williams
Print

DATED: __8/22/2024_____


**PRODUCTION RESOURCE GROUP, L.L.C.**

By: _nb_____, a duly authorized signatory
Norah Blumberg (Aug 23, 2024 03:24 PDT)

Norah Blumberg
Print

DATED: __Aug 23, 2024_____


**SOW AND SCHEDULES ATTACHED (SIGNATURE REQUIRED)**
The SOW includes the following schedules:
Schedule A - Equipment List
Schedule B - Personnel List and Services
Schedule C– Payment Schedule
Schedule D – Schedule & Itinerary


*Signature Page to Services Agreement*

Initial __LW__                         Rod Wave Inc                         Page 7
                              Music Services Agreement

Rev. 7 2023

# PRG Services Agreement - Rod Wave Inc (last version)[48]

Final Audit Report                                                          2024-08-23

| Created: | 2024-08-23 |
|---|---|
| By: | Chelsy Jensen (Chelsy.Jensen@prg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA71-C1G3cwT7-re-wsMRfYadH5ib5EUAw |

## "PRG Services Agreement - Rod Wave Inc (last version)[48]" History

📄 Document created by Chelsy Jensen (Chelsy.Jensen@prg.com)
  2024-08-23 - 0:47:22 AM GMT

✉️ Document emailed to Norah Blumberg (nblumberg@prg.com) for signature
  2024-08-23 - 0:48:39 AM GMT

📄 Email viewed by Norah Blumberg (nblumberg@prg.com)
  2024-08-23 - 10:24:20 AM GMT

✍️ Document e-signed by Norah Blumberg (nblumberg@prg.com)
  Signature Date: 2024-08-23 - 10:24:51 AM GMT - Time Source: server

✅ Agreement completed.
  2024-08-23 - 10:24:51 AM GMT

Adobe Acrobat Sign

FORM STATEMENT OF WORK – ROD WAVE

This SOW is subject to the terms and conditions of the Services Agreement entered into and between Production Resource Group, L.L.C. and Rod Wave Inc dated August 22, 2024 ("Agreement").

Effective date of this SOW is August 22, 2024

1. Event Description:

| Artist & Event Name | ROD WAVE TOUR 2024 |
|---|---|
| Description of PRG provided Services: | LIGHTING • LED • RIGGING • MEDIA SERVERS • CAMERAS • LABOR |
| Location of Event: | UNITED STATES |
| Rental Term: | OCTOBER 13, 2024 – DECEMBER 23, 2024 |

2. Insurance (please see section 10 in the Agreement):

| | |
|---|---|
| ☐ | No PRG personnel or on-site Services – Section 10.1 Client Insurance applies |
| ☒ | With on-site PRG Personnel – Both sections 10.1 & 10.2 apply |

3. **Billing:** The Parties agree that the entity to be billed for the <u>Rod Wave Birthday Bash</u> event will be <u>360 Production Group LLC</u> in the event <u>360 Production Group LLC</u> fails to make any payments due hereunder as set forth in this SOW, Client agrees to pay all Fees due within five (5) days of receiving written notice from PRG (email to suffice). Client expressly agrees to indemnify, defend and hold harmless PRG Parties from and against any and all claims (including but not limited to costs) that may arise from the non-payment of any Fees set forth in this SOW.

4. Please note the Schedules are as follows:
   A - Equipment List
   B – Personnel List and Services
   C – Payment Schedule
   D – Itinerary

PRODUCTION RESOURCE GROUP, L.L.C.
By: *Randy Hutson*
Randy Hutson (Oct 14, 2024 15:15 PDT)
Name: Randy Hutson
Title: CEO Music Group

ROD WAVE INC
By: LeShun Williams
Name: LeShun Williams
Title: Tour Manager

Rev. 1.2022

Page 1 of 3

## SCHEDULE A – EQUIPMENT

### (SENT AS A SEPARATE ATTACHMENT ON EMAIL DATED 08/23/2024)

| | |
|---|---|
| **TOTAL REPLACEMENT COST** | $ 10,822,485.75 |
| **PRG LIGHTING EQUIPMENT REPLACEMENT COST (4 PAGES)** | $ 2,178,767.36 |
| **PRG RIGGING EQUIPMENT REPLACEMENT COST (5 PAGES)** | $ 2,473,282.13 |
| **PRG VIDEO, MEDIA SERVERS AND CAMERA EQUIPMENT REPLACEMENT COST (11 PAGES)** | $ 6,170,436.26 |

## SCHEDULE B - PERSONNEL LIST

As part of the Services, PRG agrees to provide the following onsite labor: the below b.7 ("PRG Personnel").
PRG Personnel are responsible for the installation and technical operation of the Equipment, while being assisted by local labor who are under the direction, supervision, and schedule of the stage manager or site supervisor.

B.1. PRG Personnel shall address, in coordination with Client any issues that arise in connection with the set-up, operation, and maintenance of the Equipment.

B.2. PRG shall be responsible for the salaries of all PRG personnel, and per diems as addressed below.

B.3. PRG personnel shall not be considered employees of Client, notwithstanding that monies may be paid directly to such personnel by Client. As between PRG and Client, PRG shall pay all employment related taxes required to be paid in connection with the foregoing PRG personnel. The PRG personnel shall have the status of independent contractors hereunder, and nothing herein shall constitute the PRG personnel as Client's agent, employee, partner and/or joint venture.

B.4. In connection with PRG personnel, it is agreed by Client that Client shall be responsible for the following:
- Hotel accommodations (single rooms) for all PRG personnel.
- All travel, (if necessary, air travel), during the Term for all PRG personnel. Any air travel for PRG personnel shall be no less than standard air coach class.
- Ground transportation for PRG personnel which shall include; transportation to and from airports, hotels, and venues and custom buses as appropriate in the same manner as provided for Client's production crew.
- A per diem of at least $50 per person per day or the minimum tour rate for production staff, whichever is greater as agreed to in the quote (to be invoiced to Client).
- Any overtime hours worked by any PRG personnel, in accordance with local law (to be invoice to Client).
- PRG Personnel are non-union. Any union labor requirement is Client's responsibility, unless specifically agreed to in this SOW.

B.5. Client shall provide appropriate security for the Equipment and PRG personnel at all times during the Term.

B.6. Client shall provide PRG with adequate additional personnel as required by PRG. Client shall be solely responsible for the salaries and other employment related costs associated with all additional personnel provided by Client.

B.7. Labor

| QTY | POSITION |
|---|---|
| 1 | LED - Crew Chief |
| 1 | LED - Lead |
| 6 | LED Technicians/Cam Operator |
| 1 | Media Server - Programmer |
| 1 | Video - Engineer |
| 1 | Video - Assist / Utility |
| 1 | Scenic - Automation Crew Chief |
| 1 | Scenic - Automation Operator |
| 1 | Scenic - Automation Technician |
| 1 | Lighting - Crew Chief |
| 1 | Lighting - Dimmer Technician |
| 1 | Lighting - Ground Control Followspot |
| 1 | Lighting - Moving Light Technician |
| 2 | Lighting - Technicians |
| 1 | Rigging - Head Rigger |
| 1 | Rigging - Lead Rigger |
| 1 | Rigger Assist |

## SCHEDULE C – PAYMENT SCHEDULE

| | | LIGHTING, LED, RIGGING, MEDIA SERVERS AND CAMERA EQUIPMENT | | | | |
|---|---|---|---|---|---|---|
| WEEK START DATE | WEEK END DATE | EQUIPMENT | LABOR | PER DIEM | WEEKLY TOTAL | INVOICE DATE |
| 10/6/24 | 10/12/24 | $ - | $ 98,772.22 | $ 5,750.00 | $ 104,522.22 | 8/23/24 |
| 10/13/24 | 10/19/24 | $ 62,350.90 | $ 124,865.79 | $ 8,050.00 | $ 195,266.69 | 8/23/24 |
| 10/20/24 | 10/26/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 10/25/24 |
| 10/27/24 | 11/2/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 11/1/24 |
| 11/3/24 | 11/9/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 11/8/24 |
| 11/10/24 | 11/16/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 11/15/24 |
| 11/17/24 | 11/23/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 11/22/24 |
| 11/24/24 | 11/30/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 11/29/24 |
| 12/1/24 | 12/7/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 12/6/24 |
| 12/8/24 | 12/14/24 | $ 145,485.44 | $ 124,865.79 | $ 8,050.00 | $ 278,401.23 | 12/13/24 |
| 12/15/24 | 12/21/24 | $ 83,134.56 | $ 83,713.84 | $ 5,150.00 | $ 171,998.40 | 12/20/24 |

| | |
|---|---|
| TOTAL | $ 2,698,997.15 |

| ADDITIONS OR ONE TIME CHARGES | |
|---|---|
| PREP LABOR | $ 41,952.00 |
| CONSUMABLES | $ 8,000.00 |
| TRAVEL/HOTELS | $ 45,025.00 |
| PRODUCTION | $ 9,750.00 |
| ENGINEERING | $ 3,750.00 |

| | |
|---|---|
| GRAND TOTAL | $ 2,807,474.15 |

- All payments are due and payable upon invoice receipt.
- Deposit Due $299,788.91 (First and Second Week)
- Any applicable taxes and fees will be included at time of invoicing.
- Any additional equipment and/or consumables such as fog fluid, effect wheels, gobos, etc. will be billed separately as used, provided there is written notice.
- Additional billing for the tour will be updated when dates are finalized.
- Client is responsible for any bond, carnet and/or customs fees.
- All equipment must be returned to PRG by 12/23/2024 or be subject to additional invoicing.

### SCHEDULE D – ITINERARY

| Date | Activity |
|---|---|
| 10/8/24 | Travel |
| 10/9/24 - 10/13/24 | Prep |
| 10/14/24 | Travel |
| 10/15/24 - 10/19/24 | Rehearsals |
| 10/20/24 - 12/18/24 | Tour |
| 12/19/24 | Travel |
| 12/20/24 - 12/22/24 | De-Prep |

# PRG SOW - Rod Wave Tour 2024

Final Audit Report                                                                 2024-10-14

| | |
|---|---|
| Created: | 2024-10-14 |
| By: | Chelsy Jensen (Chelsy.Jensen@prg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAteBa2We9oHSYmBG6jLqRpNtfFWOnyPZB |

## "PRG SOW - Rod Wave Tour 2024" History

- Document created by Chelsy Jensen (Chelsy.Jensen@prg.com)
  2024-10-14 - 5:06:41 PM GMT

- Document emailed to Randy Hutson (rhutson@prg.com) for signature
  2024-10-14 - 5:06:45 PM GMT

- Email viewed by Randy Hutson (rhutson@prg.com)
  2024-10-14 - 10:14:43 PM GMT

- Document e-signed by Randy Hutson (rhutson@prg.com)
  Signature Date: 2024-10-14 - 10:15:10 PM GMT - Time Source: server

- Agreement completed.
  2024-10-14 - 10:15:10 PM GMT

Adobe Acrobat Sign